[Cite as *State v. Sizler*, 2020-Ohio-4423.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-L-075** |
| MICHAEL D. SIZLER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2018 CR 000761.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor and *Jennifer A. McGee,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, Ohio 44077 (For Plaintiff-Appellee).

*Hector G. Martinez, Jr.,* and *Leslie S. Johns,* 4230 State Route 306, Suite 240, Willoughby, Ohio 44094 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Michael D. Sizler, appeals his conviction arguing he was denied effective assistance of counsel and trial counsel of choice. We affirm.

{¶2} Appellant was convicted of felonious assault, a second-degree felony under R.C. 2903.11(A)(1), following a jury trial.

{¶3} Emily Barber and Daniel Hibbs were getting married in July of 2017. Barber invited her friends, Rachael Parry and Teresa Gregori. Appellant, who was dating

Gregori, accompanied her to the wedding. Gregori drove all three to the wedding and reception.

{¶4} During the four hours between the wedding and reception, Gregori, appellant, and Parry went to a local restaurant and had a few drinks and appetizers. Upon arriving at the reception, appellant and Parry drank more. According to various witnesses, appellant was heavily intoxicated by the end of the reception at 11:00 p.m.

{¶5} As the evening progressed, appellant was primarily talking with a group of men at an adjacent table. Feeling slighted, Gregori ignored appellant, and as the reception was ending, Gregori decided to leave the banquet hall without telling appellant.

{¶6} At approximately the same time Gregori and Parry were leaving, appellant was involved in two separate physical altercations with Garrett Hass, a cousin of the groom. The first altercation occurred when Hass saw one of his female cousins having a heated argument with appellant. Hass walked over to his cousin's table, grabbed appellant by the collar of his shirt, pushed him away, and forced him into a wall. Hass ripped the back of appellant's shirt. After releasing his grip on appellant, Hass told him to leave the reception.

{¶7} The second altercation occurred as appellant was leaving the hall. Again, observing him from a short distance, Hass saw appellant exchanging heated words with Hass's father. When appellant appeared to be lunging toward his father, Hass stepped between them and pulled appellant away from his father. As appellant was turning toward Hass, he swung his arms and hit Hass in the nose. In response, Hass hit appellant on the head, causing him to fall to the floor. At that point, Hass's brother assisted him and pinned appellant to the floor with his knee.

2

{¶8} Once appellant calmed down, the Hass brothers allowed him to stand up. The groom's mother then convinced appellant to leave. A few individuals escorted him out because he was still being verbally abusive.

{¶9} After appellant walked into the parking lot, another altercation occurred during which he pushed Rachael Parry face-first onto the pavement causing her to sustain serious physical harm to her head and knees.

{¶10} According to appellant and Gregori, as appellant exited the building, Gregori and Parry were standing near Gregori's car, facing the hall's front doors. Before appellant could reach the first row of vehicles, he was surrounded by a group of men who pushed him to the ground and began punching and kicking him. This attack was so fierce that appellant momentarily lost consciousness, and after the attack ended, appellant stood up and staggered toward the vehicles while keeping his eyes on his attackers. As appellant was looking back at the entrance, Parry walked up behind him and touched him on the shoulder, and without looking back to see who it was, appellant immediately turned and pushed Parry with both hands, as if trying to protect himself.

{¶11} During their investigation, the police found three witnesses who gave conflicting statements. According to these witnesses, appellant was not attacked by any one after he exited the banquet hall. Instead, he walked by himself into the parking lot, went into the first row of cars facing the building, and then circled around the back end of a vehicle so that he was facing the front door. Parry and Gregori were standing near the front of that vehicle, also looking back at the hall's front door with appellant now behind both Parry and Gregori. Appellant then rushed toward the front of the vehicle and pushed Parry in the back with both hands. Parry's head momentarily snapped backward before

3

she fell forward. Her head and knees hit the pavement first.

{¶12} Someone inside had already contacted the police, and two patrolmen arrived within moments after Parry was injured. They arrested appellant for assault. Parry was taken to multiple local hospitals and treated for a subdural hematoma. In addition to suffering headaches months after the incident, she sustained permanent nerve damage above her right eye.

{¶13} Although his trial was initially scheduled to go forward in October 2018, the trial court granted a continuance when appellant fired his first attorney. A new trial date was set for November 2018 after appellant hired Attorney Weatherly to represent him. That trial date was also continued so appellant could consider a plea offer.

{¶14} Trial was rescheduled for February 19, 2019. Attorney Weatherly's motion to continue trial was denied. At a pretrial hearing on February 13, 2019, appellant advised the court that he wanted to terminate Attorney Weatherly; that he had already taken steps to hire new counsel; and that he had just become aware of five new possible witnesses. Regarding the request to replace counsel, the court held that appellant could go forward with new counsel if his new attorney was ready to proceed on the scheduled date. As to the five new witnesses, the court ordered him to provide their names to the state by the end of that day, but he never did.

{¶15} Two days after the pretrial, appellant entered a guilty plea to attempted felonious assault. The trial court accepted the guilty plea and scheduled sentencing. However, on that date, the court granted appellant's motion to withdraw the guilty plea and rescheduled the trial for June 25, 2019.

{¶16} Three weeks later, Attorney Weatherly moved to withdraw, claiming

4

appellant again discharged him and was in the process of hiring new counsel. On April 30, 2019, the court rendered an order conditionally granting the motion to withdraw provided appellant's new attorney appeared and was ready to proceed with the scheduled trial. The order further indicated that if new counsel were not prepared to go forward on June 25, 2019, Attorney Weatherly would remain as trial counsel.

{¶17} On May 30, 2019, two attorneys filed their notice of appearance, stating that they had recently been retained. Four days later, they moved to continue the trial arguing they needed additional time to prepare. The trial court overruled the motion, holding that appellant had been given sufficient time to hire new counsel to go forward with trial as scheduled. As a result, the two new attorneys withdrew. Attorney Weatherly again moved to withdraw on the basis that he was not prepared, and the court also overruled that motion.

{¶18} Appellant's trial was held June 25, 2019, as scheduled. Appellant was represented by Weatherly throughout, and appellant testified on his own behalf. Attorney Weatherly argued that appellant acted in self-defense when he pushed Parry. The jury found appellant guilty of felonious assault, and he was sentenced to four years in prison.

{¶19} Appellant asserts two assignments for review:

{¶20} "[1.] The trial court erred when it denied defense counsel's motions to withdraw as counsel of record.

{¶21} "[2.] Appellant was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

{¶22} Under his first assignment, appellant asserts that his constitutional right to

5

counsel of choice was violated when the trial court refused to permit Attorney Weatherly to withdraw and did not grant a continuance to enable his new attorneys time to prepare for trial. Appellant contends that in weighing the relevant factors the court placed too much emphasis on the status of its docket. He also argues that the court failed to give proper weight to his statements regarding his dissatisfaction with Attorney Weatherly's trial preparation.

{¶23} The Sixth Amendment right to counsel includes counsel of choice when a criminal defendant does not require appointed counsel. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). When this right is violated, no additional showing of prejudice is required to be entitled to a new trial. *Id.* at 148. However, the right to counsel of choice is not absolute. *State v. Goodman*, 11th Dist. Trumbull No. 2006-T-0130, 2007-Ohio-6252, ¶ 30. A trial court has wide latitude in balancing the right to counsel of choice against the needs of fairness and the demands of its calendar. *Gonzalez-Lopez*, at 32. To this extent, a defendant is not permitted to exercise this right in a way that interferes with the orderly administration of justice. *Goodman*, at ¶ 30.

{¶24} The determination of a motion to substitute counsel lies within a trial court's sound discretion and will not be reversed in the absence of abuse. *Goodman*, at ¶ 29. Abuse of discretion lies when the ruling does not comport with the record or reason. *Id.* at ¶ 24.

{¶25} "Factors to consider in deciding whether a trial court erred in denying a defendant's motion to substitute counsel include 'the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict

6

between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.' *United States v. Jennings*, (C.A.6, 1996), 83 F.3d 145, 148." *State v. Jones*, 91 Ohio St.3d 335, 342, 744 N.E. 2d 1163 (2001).

{¶26} As to timeliness, appellant urges that Attorney Weatherly filed his first motion to withdraw as trial counsel April 22, 2019, approximately two months prior to the scheduled trial date of June 25, 2019. However, appellant fails to acknowledge that this motion was conditionally granted. On April 30, 2019, the trial court permitted appellant to hire substitute trial counsel, as long as new counsel was prepared to proceed with trial. As a result, the court gave appellant approximately fifty days to hire substitute counsel.

{¶27} As part of his April 22, 2019 motion to withdraw, Attorney Weatherly states that appellant already retained new counsel. Yet, no new notice of appearance was filed with the trial court until May 31. In addition, appellant's substitute counsel then moved for a continuance, three weeks before the scheduled trial date.

{¶28} During the June 2019 hearing on the motion to continue, appellant explained the delay in the appearance of new counsel. He informed the trial court that as of April 20, 2019, he thought he had retained an attorney to represent him, but that attorney's representation was contingent on obtaining a continuance in a different case. Appellant told the court that this prospective attorney told appellant that he could not represent him because his other case was going forward as scheduled. Appellant's new attorneys were then hired one week later.

{¶29} The April 30, 2019 judgment grants appellant's request to hire substitute counsel if new counsel could proceed on the scheduled trial date. Thus, appellant was

7

fully aware of the time limitations. Notwithstanding, appellant waited approximately four weeks for an attorney to inform him that he could not take his case. Accordingly, appellant's failure to timely hire substitute counsel was a result of his own actions.

{¶30} Attorney Weatherly's second motion to withdraw was filed June 18, 2019, only seven days prior to the scheduled trial date. Given that the case had been pending for approximately eleven months and that appellant had been afforded time to hire substitute counsel, this motion was overruled.

{¶31} Appellant also asserts the trial court did not give proper weight to his complaints about Attorney Weatherly's performance because it was too concerned about the status of its docket. However, the orderly administration of justice is a proper factor for a trial court to consider in determining whether a defendant should be afforded additional time to hire substitute counsel.

{¶32} Moreover, the record does not support appellant's contention that the trial court gave too much weight to this factor. Prior to February 2019, appellant had already been granted two continuances after trial was set. In addition, after the trial court denied his request to continue the trial scheduled February 19, 2019, appellant again delayed the trial by entering a guilty plea, which he withdrew approximately forty days later.

{¶33} As stated, appellant maintained that Attorney Weatherly had not adequately investigated the case during the five-month period before entering his guilty plea in February 2019. There is nothing in the record to support this allegation. As the trial court aptly noted, Attorney Weatherly hired a private investigator to look into the case in October 2018. Furthermore, although appellant alleged at the February 13, 2019 hearing that he had recently learned the names of five new potential witnesses, he did not confirm

8

this allegation as required.

{¶34} As noted, appellant first asserted the issue of his dissatisfaction with Attorney Weatherly on February 13, 2019. Two days later, he pled guilty to the lesser charge of attempted felonious assault. During the change-of-plea hearing, appellant confirmed that he was satisfied with Attorney Weatherly's representation. Thus, the court found that his asserted dissatisfaction was a ploy to delay his trial. And given the lack of specificity in appellant's complaint about Weatherly's performance, the degree of the trial court's inquiry into the complaint was adequate.

{¶35} Last, as to the lack of communication, the record establishes that although appellant told the trial court on at least two occasions that he was dissatisfied with Attorney Weatherly's trial preparation, appellant did not give any indication that the attorney-client relationship had deteriorated to the point that they could no longer communicate. Similarly, there is nothing establishing that they were unable to discuss strategy during the trial.

{¶36} As to this factor, appellant emphasizes that in moving to withdraw from the case immediately prior to trial, Attorney Weatherly admitted he had not prepared for trial since the trial court's April 30, 2019 conditional order. However, this does not establish that Attorney Weatherly was not already prepared to try the case in February 2019 or that new facts were discovered warranting further preparation. Moreover, Attorney Weatherly's performance at trial demonstrates that he was fully aware of the underlying facts and was able to provide effective representation.

{¶37} In light of the foregoing, each of the three *Jones* factors supports the conclusion that the trial court did not abuse its discretion in overruling Attorney

9

Weatherly's second motion to withdraw as trial counsel. Further, given the timing of appellant's complaints as to the quality of Weatherly's representation and the lack of any specificity, the trial court's finding that appellant was seeking to delay the trial, thereby interfering with the orderly administration of justice is supported. Hence, appellant's right to counsel of choice was not violated. The trial court's findings consistently afforded appellant counsel of choice provided counsel was ready to proceed. The first assignment lacks merit.

{¶38} Under his second assignment, appellant argues that he is entitled to a new trial because Attorney Weatherly' performance was ineffective in four respects.

{¶39} To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal,* 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), *Citing Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show prejudice from counsel's deficient performance, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley,* 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989); *State v. Fortune*, 2015-Ohio-4019, 42 N.E.3d 1224, ¶ 26 (11th Dist.).

{¶40} Appellant's first ineffective assistance argument claims his attorney was deficient based on his failure to object to hearsay testimony. During the testimony of Brennan Hass, Garrett Hass's brother, he testified about the events he saw before the physical altercation between appellant and Garrett. The second altercation took place

10

after appellant was involved in a heated conversation with their father. Brennan testified that he heard his father tell appellant that he was no longer welcomed at the reception and "'[y]ou can't go home with your date.'"

{¶41} Appellant contends that counsel's failure to object was prejudicial because it undermined his assertion that he was acting in self-defense when he pushed Parry. However, Gregori was appellant's date not Parry. This testimony, despite argument to the contrary, does not raise an inference that the appellant harbored animosity toward Parry, and does not undermine appellant's defense that he mistook Parry as being part of the group that had just assaulted him. Thus, the lack of objection did not affect the outcome of the trial.

{¶42} During Parry's testimony, she twice relayed hospital personnel statements regarding the nature of her injuries. However, this information was in Parry's hospital records admitted at trial. Because Parry's testimony was repetitive of other evidence, the failure to object was not prejudicial.

{¶43} Under his second ineffective assistance argument, appellant argues that trial counsel acted deficiently by failing to subpoena EMS and hospital personnel who cared for Parry. Other evidence presented by the state established that while receiving treatment, Parry made statements about how she was injured that tended to support appellant's version of the incident. Appellant contends that these other witnesses could have elaborated on Parry's statements.

{¶44} The record contains no indication as to what the substance of the EMS and hospital personnel's testimony would have been if they had been called to testify. To this extent, appellant's argument is based on speculation and is insufficient to show that the

11

outcome of the trial would have been different. *State v. Kovacic*, 2012-Ohio-219, 969 N.E.2d 322, ¶ 51 (11th Dist.). His second argument fails.

{¶45} Under his next argument, appellant maintains that he was denied effective assistance when trial counsel failed to object to the court's questioning of witnesses in front of the jury. Appellant argues the nature of the court's questions to Christina Hibbs and Teresa Gregori showed the court was attempting to elicit answers beneficial to the state and that the court was biased.

{¶46} At the conclusion of each witness's testimony, the trial court asked the members of the jury to submit any questions they had for that witness. Upon reviewing the submissions to determine propriety, the trial court posed the questions to the witness on behalf of the jurors.

{¶47} The questions appellant challenges were submitted by the jury and merely asked by the court. Appellant has failed to show the questions asked were inappropriate or that the court improperly allowed the questions. This argument therefore fails.

{¶48} Under his final ineffective assistance argument, appellant contends that instead of arguing self-defense, his counsel should have asserted that Parry's injuries were the result of an accident. In support, appellant relies on the trial court's discussion with the attorneys concerning possible jury instructions, and the court's concern as to whether a self-defense instruction was warranted. However, by the end of the discussion, the trial court was satisfied that a self-defense instruction was justified.

{¶49} Moreover, appellant's testimony did not support that he accidentally collided with Parry. Instead, he said that he had already broken free from his attackers and was moving away from them when he felt a bump on his back. He thought that someone else

12

was attacking him from behind, so he turned without looking and pushed Parry. If believed, this testimony supports a finding that appellant purposely pushed her to protect himself. Hence, the appropriate defense to assert was self-defense.

{¶50} Thus, appellant was not denied effective assistance of trial counsel, and his second assignment lacks merit.

{¶51} The judgment of the Lake County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.